1

2

3

UNITED STATES DISTRICT COURT

4

NORTHERN DISTRICT OF CALIFORNIA

5

SAN JOSE DIVISION

6

7

WORLD FINANCIAL GROUP
INSURANCE AGENCY,

Case No.   24-cv-00480-EJD

8

Plaintiff,

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS**

9

v.

10

ERIC OLSON, et al.,

Re: ECF Nos. 79, 80

11

Defendants.

12

13    Before the Court is Defendant Eric Olson's ("Mr. Olson") motion to dismiss Plaintiff

14    World Financial Group Insurance Agency's ("WFG," "WFGIA," or "Plaintiff") First Amended

15    Complaint (ECF No. 72, "FAC").  Eric Olson's Motion to Dismiss, ECF No. 79 ("Mot." or

16    "Motion").  Also before the Court is Defendant Sandra Olson's ("Ms. Olson") motion to dismiss

17    the FAC and joinder in Mr. Olson's motion to dismiss.  Sandra Olson's Motion to Dismiss, ECF

18    No. 80.  The Court addresses both motions in this Order.[1]

19    For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART

20    Mr. Olson's and Ms. Olson's motions to dismiss.

21    **I.      BACKGROUND**

22    **A.      The Parties**

23    The following factual background is taken from the FAC except if otherwise noted.

24    WFG provides a business platform for individuals who wish to operate their own

25    independent financial services business.  FAC ¶ 23.  It offers fixed insurance products through

26

27    [1] For ease of reference, "Motion" throughout this Order refers to both Mr. Olson and Ms. Olson's
       motions unless otherwise noted.

28    Case No.: 24-cv-00480-EJD
       ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
                                                  1

United States District Court
Northern District of California

1  WFG and other state-specific affiliated agencies.  *Id.*  In addition to offering insurance products to

2  customers, the independent contractors recruit other insurance agents to work under them.  *Id.* ¶

3  25.  This structure is referred to as a "hierarchy" and WFG considers this its confidential

4  information.  *Id.*  While the fact that an agent is affiliated with WFG is not confidential, WFG

5  contends that the position of an agent within a particular hierarchy, and the relationship between

6  agents within a hierarchy is information that is not generally known outside of WFG and is

7  maintained as confidential.  *Id.* ¶ 26.  Under the hierarchy structure, insurance agents receive an

8  override, which is a portion of the commission paid by the product provider.  *Id.* ¶ 27.

9      Mr. Olson began working as a WFG agent in 2003.  *Id.* ¶ 57.  He rose through his

10  hierarchy at WFG and achieved the position of Field Chairman.  *Id.*  During the last 20 years,

11  Mr. Olson made millions of dollars through his association with WFG.  *Id.*  To help him conduct

12  business through WFG, Mr. Olson began using a WFG cobrand name, through which his

13  hierarchy operates, called Pinnacle Elite ("Pinnacle").  *Id.* ¶ 58.  Ms. Olson also worked with

14  WFG.  *Id.* ¶ 62.  After marrying Mr. Olson, she moved into his hierarchy.  *Id.*

15      In September 2023, Mr. Olson attempted to move his hierarchy under Ms. Olson's name.

16  *Id.* ¶ 65.  WFG prevented him from doing so because WFG contends it "had difficulty

17  understanding the Olsons' motivation."  *Id.* ¶ 66.  On October 4, 2023, Ms. Olson resigned from

18  WFG, and on October 13, 2023, Ms. Olson formed Global Financial Impact, LLC ("GFI").

19  *Id.* ¶¶ 68–69.  WFG alleges that GFI was formed to enrich both of the Olsons and for the unlawful

20  purpose of stealing from WFG and its insurance agents.  *Id.* ¶ 78.

21      WFG alleges that Mr. Olson improperly recruited WFG insurance agents away from WFG

22  to join his and Ms. Olson's newly formed company, GFI.  *Id.* ¶ 83.  WFG alleges that the Olsons,

23  with the help of others, used WFG's confidential and proprietary compensation and organizational

24  data to target specific teams of insurance agents with spouses who also served as WFG insurance

25  agents to recruit agents to GFI.  *Id.* ¶¶ 84–88.

26      **B.    The Agreement**

27      When WFG brings on an insurance agent, it requires the agent to sign the Agent

28  Case No.: 24-cv-00480-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Agreement (the "Agreement")[2].  Mot. 3; FAC ¶ 39.  The relevant provisions are identified below:

> The Non-Solicitation Provision.
>
> Except as prohibited by law, during the period that Agent is an Agent of WFG and for a period of two (2) years following the termination of this Agreement for any reason, Agent shall not, either individually or in partnership or jointly or in conjunction with any other person or entity, as principal, agent, consultant, contractor, employer, employee or in any other manner, directly or indirectly, solicit, induce or entice away or in any other manner persuade or attempt to persuade any individual who is a current agent of WFG and with whom the Agent had business contact with on behalf of WFG or its affiliated or related entities, to terminate or alter their agent relationship with WFG to join a competing organization. This non-recruitment restriction is limited and only applies with respect to any recruitment of an agent that resided in or engaged in business activities in the geographic area within fifty (50) miles of the location of the Agent's office(s) during the eighteen (18) month period preceding the recruitment. This provision survives the termination of this Agreement.

Agreement § 2.15.

> The Confidentiality Provision.
>
> Agent will not use, disseminate or reveal, other than on behalf of WFG as authorized by WFG or the Product Providers, any Confidential Information or Trade Secret of WFG or of the Product Providers, which Agent has or hereafter receives. Agent agrees that immediately upon the termination of this Agreement, Agent will return all documents, files and lists containing any Confidential Information or Trade Secret to WFG and the same shall not be copied or duplicated.

Agreement § 2.16.

> The Non-Disparagement Provision.
>
> Agent shall not do anything that will damage the business, good name or reputation of WFG, Affiliated Companies and/or their respective officers, directors, and employees.

Agreement § 2.17.

Agents are required to sign the Agreement each year.  Mr. Olson signed his annual

Agreement on February 27, 2023, and Ms. Olson signed her annual Agreement on April 12, 2023.

---

[2] WFG also entered into Executive Marketing Director Agreements with certain insurance agents, including Mr. Olson.  FAC ¶¶ 40, 49.  Both agreements contain the same relevant provisions, and the Court refers to the Agreement only throughout this Order for ease of reference.

1   FAC ¶¶ 49–50.

2       **C.**    **Procedural History**

3         WFG commenced this action and applied for an *ex parte* temporary restraining order

4   against Defendants Eric Olson, Sandra Olson, and Does 1–50 (i.e., unknown co-conspirators)

5   before the Superior Court of California, County of Santa Clara, on January 25, 2024.  ECF No. 1-

6   3.  The Olsons removed the case to this Court on January 26, 2024.  ECF No. 1.  On January 29,

7   2024, WFG refiled its Motion for Temporary Restraining Order in this Court.  ECF Nos. 15, 16.

8   On February 22, 2024, the Court denied the motion and granted WFG's request for expedited

9   discovery.  Order Denying Motion for Temporary Restraining Order ("TRO Order"), ECF No. 64;

10  Order Granting Request for Expedited Discovery, ECF No. 67.

11        On February 15, 2024, Mr. Olson filed a Motion to Dismiss the Complaint, which was

12  joined by Ms. Olson.  ECF Nos. 62, 63.  On February 29, 2024, WFG filed its FAC and added

13  three new defendants: Defendants Michael Cherniawski, Eric Carter, and DaJuan Cofield.

14  *See* FAC.  On March 14, 2024, the Olsons filed the present Motions.  ECF Nos. 79, 80.  The

15  Motions are fully briefed.  WFG's Opposition to Motion to Dismiss ("Opp."), ECF No. 96; Eric

16  Olson's Reply in Support of Motion to Dismiss ("Reply"), ECF No. 98; Sandra Olson's Joinder in

17  Eric Olson's Reply, ECF No. 99.  The Court heard oral argument on the Motion on May 2, 2024.

18        Both Mr. and Ms. Olson have separately filed lawsuits against WFG alleging various

19  causes of action relating broadly to their involvement with WFG.  *Eric Olson v. World Fin. Group*

20  *Ins. Agency*, No. 24-cv-00481-EJD (N.D. Cal.); *Sandra Olson v. World Fin. Group Ins. Agency*,

21  No. 24-cv-00477-EJD (N.D. Cal.).

22  **II.**    **LEGAL STANDARD**

23        Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

24  short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint

25  that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  Rule 8(a) requires a

26  plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.*

27  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

28

United States District Court
Northern District of California

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While plaintiffs must allege "more than a sheer possibility that a defendant has acted unlawfully," the plausibility standard "is not akin to a probability requirement." *Id.*

For purposes of ruling on a Rule 12(b)(6) motion, the Court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The Court need not, however, "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).  The Court may also "look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment.  *Shaw v. Hahn*, 56 F.3d 1128, 1129 (9th Cir. 1995).

## III.   DISCUSSION

The Olsons move to dismiss all claims against them for failure to state a claim under Rule 12(b)(6).  Broadly, the Olsons contend that each of WFG's claims lack merit and should be dismissed because the claims all "derive from" the Non-Solicitation Provision, the Confidentiality Provision, and Non-Disparagement Provision—the three provisions the Olsons collectively refer to as the "Restrictive Covenant."  Specifically, the Olsons move to dismiss WFG's breach of contract claim on the grounds that (1) the Agreement violates § 16600, and (2) WFG fails to plead sufficient facts to establish a breach of contract.  The Olsons also move to dismiss WFG's remaining claims for tortious interference with contract, civil conspiracy, fraud, conversion, violation of the unfair competition law, and unjust enrichment for failure to state a claim under Rule 12(b)(6).

The Court addresses each cause of action below.

Case No.: 24-cv-00480-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

### A.    Breach of Contract—First Cause of Action

The Olsons first move to dismiss WFG's breach of contract claim under Rule 12(b)(6) on the grounds that it rests on enforcing a contract that violates California law. Mot. 7. The Olsons contend that all three relevant provisions of the Agreement separately violate Section 16600. WFG responds that the Confidentiality Provision and the Non-Disparagement Provision are both on their own valid, and the Non-Solicitation Provision is still actionable for breaches that occurred during the Olsons' engagement with WFG. Opp. 4–5.

As an initial matter, the Court observes that the Olsons rely heavily on the Court's ruling in denying WFG's motion for temporary restraining order. That order evaluated the relevant provisions under a different standard and with the evidence before the Court at that time. To the extent that the Court's reasoning in its TRO Order is applicable here, the Court will so state. With that in mind, the Court proceeds to evaluate the present motion under Rule 12(b)(6).

### 1.    Section 2.15—the Non-Solicitation Provision

Turning first to the Non-Solicitation Provision, the Court agrees with WFG that the TRO Order did not expressly rule that the Non-Solicitation Provision is entirely unenforceable. For the reasons explained in its TRO Order, the Court will evaluate whether the relevant provisions are void under the *Edwards* framework. *See* TRO Order 12–16. The Court briefly restates its findings here.

Whether WFG has stated a claim for breach of the Non-Solicitation Provision involves the application of § 16600 to the Non-Solicitation Provision. Section 16600 provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600(a). Section 16600 "shall be read broadly, in accordance with Edwards v. Arthur Andersen LLP (2008) 44 Cal.4th 937, to void the application of any noncompete agreement in an employment context, or any noncompete clause in an employment contract, no matter how narrowly tailored, that does not satisfy an exception in this chapter." *Id.* at (b)(1). *Edwards* held that "Section 16600 is unambiguous, and if the Legislature intended the statute to apply only to restraints that were unreasonable or overbroad, it

1    could have included language to that effect." *Edwards*, 44 Cal. 4th at 950 (rejecting contention

2    that court "should adopt a narrow-restraint exception to section 16600").

3            Prior to *Edwards*, *Loral Corp. v. Moyes* found that an agreement which was more akin to

4    "a restraint on solicitation of customers or on disclosure of confidential information" than a

5    noncompete agreement was upheld.  174 Cal. App. 3d 268, 276 (1985) ("*Loral*").  The court

6    reasoned that the agreement only slightly affected the plaintiff's employees because they were not

7    hampered from seeking employment with defendant's new employer; nor did the agreement

8    prevent the plaintiff's employee from contacting the contracting defendant.  The only option

9    employees lost was the option of being contacted by the defendant first.  *Id.* at 279–80.  The court

10   further reasoned that "[t]he restriction presumably was sought by plaintiffs in order to maintain a

11   stable work force and enable the employer to remain in business."  *Id.* at 280.  Thus, since the

12   court found that the noninterference agreement "ha[d] the apparent impact of limiting

13   [defendant's] business practices in a small way in order to promote [the employer's] business," it

14   did not find the agreement to be void on its face under section 16600.  *Id.*

15           Courts have considered the impact of the *Edwards* holding on *Loral*.  For instance, *AMN*

16   *Healthcare, Inc. v. Aya Healthcare Servs., Inc.* expressly stated that it "doubt[s] the continuing

17   viability of [*Loral*] post-*Edwards*" but nevertheless evaluated the agreement at issue using the

18   *Loral* reasonableness standard.  28 Cal. App. 5th 923, 939 (2018).  Other courts, in evaluating the

19   two cases vis-à-vis, have similarly questioned whether non-solicitation agreements permitted

20   under *Loral* remain so following *Edwards*.  For example, *Race Winning Brands, Inc. v. Gearhart*

21   evaluated a confidentiality agreement that stated plaintiff must not, "for one year following the

22   termination of [his] employment ... directly or indirectly through another person or entity, induce

23   or attempt to induce any employee of [plaintiff] to suspend, decrease or terminate their

24   employment or otherwise interfere with the relationship ...."  No. 22-CV-1446-FWS-DFM, 2023

25   WL 4681539, at *9 (C.D. Cal. Apr. 21, 2023).  This is nearly identical to the Non-Solicitation

26   Provision in the Agreement here.  The court explained that, before *Ixchel*, "several district courts

27   considering *AMN* followed its interpretation that § 16600 broadly invalidates non-solicitation

28   Case No.: 24-cv-00480-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    agreements imposed on terminated employees.  *Id.* (citing *Gen. Elec. Co. v. Uptake Techs., Inc.*,

2    394 F. Supp. 3d 815, 827–28 (N.D. Ill. 2019) (finding *AMN*'s interpretation of *Edwards*

3    persuasive notwithstanding *Loral* and noting some decisions issued after *Edwards* but before *AMN*

4    upheld non-solicitation agreements)).  The court held that the non-solicitation clause "contained in

5    an employment agreement" which "prevents Defendant from soliciting Plaintiff's other employees

6    to work with Defendant for one year following his termination" was void under section 16600

7    absent a statutory exception.  *Id.* at *11; *see also Parsable, Inc. v. Landreth*, No. 22-CV-01741-

8    CRB, 2022 WL 19692034, at *3 (N.D. Cal. Aug. 5, 2022) (holding non-solicitation clause "void

9    and unenforceable under California law" even where employee was not in business of recruiting

10   because "[a] non-solicitation clause works a restraint on any former employee by restricting who

11   may work alongside them") (quotations omitted); *Minnesota Life Ins. Co. v. Link-Allen & Assocs.,*

12   *Inc.*, No. 20-CV-06082-RS, 2021 WL 9860789, at *4 (N.D. Cal. Jan. 22, 2021) (explaining that

13   California's protection under section 16600 "brooks no exception when it comes to non-

14   solicitation clauses" and collecting cases); *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 852

15   (N.D. Cal. 2019), *modified in part*, No. 18-CV-07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5,

16   2019) (finding non-solicitation provision void under section 16600 and rejecting argument that

17   *AMN* departed from *Loral*).

18        As explained in the TRO Order, the Court finds that *Edwards*, at a minimum, cast doubt on

19   *Loral*.  *See* TRO Order 12–16.  Moreover, the Olsons have stated that they are in the business of

20   recruiting, so the Non-Solicitation Provision would have a negative impact on their business.  *See*

21   *AMN Healthcare*, 28 Cal. App. 5th at 939; *see also NuLife Ventures v. Avacen*, No. 20-cv-2019-

22   BAS-KSC, 2020 WL 7318122, at *11 (S.D. Cal. Dec. 11, 2020) (finding plaintiff failed to

23   demonstrate a probability of prevailing on the merits of its breach of contract claim where the

24   contractual provisions at issue "restrict [the independent contractor's] ability to practice their sales

25   profession in the MLM industry, which rely on a sales agent's recruitment of new sales agents").

26   If enforced, the Non-Solicitation Provision would restrain the Olsons "from engaging in their

27   chosen profession."  *AMN Healthcare*, 28 Cal. App. at 939.  Thus, the Court concludes that the

28   Case No.: 24-cv-00480-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

Non-Solicitation Provision is void under section 16600.

WFG argues that the *Edwards* holding and analysis "only govern post-termination activity when reviewing the enforceability of restrict covenants," and it "does not void covenants not to solicit while the worker is still engaged with the company." Opp. 12. In support, WFG cites *Techno Lite, Inc. v. Emcod, LLC*, which explained that section 16600 "does not affect limitations on an employee's conduct or duties *while employed*." 44 Cal. App. 5th 462, 471 (2020) (emphasis in original). But that case is distinguishable because it involved allegations of fraud based on a promise not to compete with defendant's employer while defendant was still employed with the employer. *Id.* at 474. The court did not consider the impact of an agreement not to compete during employment *and for a period following* the termination of the agreement.

Even if *Edwards* does not void covenants not to solicit while the worker is still engaged with the company—as WFG contends—that is not the covenant at issue here. The Non-Solicitation Provision here involves an agreement not to compete "during the period that Agent is an Agent of WFG *and for a period of two (2) years following* the termination of this Agreement." Agreement § 2.15 (emphasis added). WFG's argument that the Non-Solicitation Provision is not invalid because it prohibits solicitation during employment "ignores the broad wording" of the Non-Solicitation Provision. *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 578 (2009). Because the Non-Solicitation Provision "at issue here goes well beyond prohibiting active solicitation by prohibiting departing employees from" soliciting WFG agents for a period of two years following the termination of the Agreement, the provision is not exempt from section 16600. *Id.* at 578–79.

Moreover, the California Court of Appeal in *AMN Healthcare* tested "broadly worded provisions preventing [employees], for a period of at least one year after termination of employment ..., from either directly or indirectly soliciting or recruiting, or causing others to solicit or induce, any employee of" the plaintiff firm. 28 Cal. App. 5th at 936. As here, the language of the nonsolicitation provision at issue in *AMN* proscribed solicitation both "during Employee's employment with the Company" *and* "for a period of [one year or] eighteen months

1  after the termination of the employment relationship with the Company." *Id.* at 929.  Even with

2  the included prohibition on soliciting during the employee's employment, the *AMN* court

3  "conclude[d] that the nonsolicitation of employee provision [at issue was] ... void under section

4  16600." *Id.* at 936; *see also W. Air Charter, Inc. v. Schembari*, No. 17-CV-00420-ABK-SX, 2017

5  WL 7240775, at *1 (C.D. Cal. Dec. 14, 2017) (nonsolicitation provision invalidated that included

6  prohibition on soliciting both "during" or "at any time after Employee's employment").

7      The Court also rejects WFG's suggestion that the Non-Solicitation Provision can be

8  reformed to apply only to pre-termination misconduct.  Opp. 12.  "Any attempt to construe the

9  [Non-Solicitation Provision] in such a manner as to make [it] lawful would not be reforming the

10  contract to correct a mistake of the parties but rather to save a statutorily proscribed and void

11  provision." *Dowell*, 179 Cal. App. 4th at 579; *see also Kolani v. Gluska*, 64 Cal. App. 4th 402,

12  407, 75 Cal. Rptr. 2d 257 (1998) (affirming trial court's decision "not [to] rewrite the broad

13  covenant not to compete into a narrow bar" because "the policy of [Section 16600] would be

14  undermined by doing so").[3]

15      Because the Court finds that the Non-Solicitation Provision is subject to *Edwards* and void

16  under section 16600, the Non-Solicitation Provision cannot generate a cognizable breach of

17  contract claim.  Accordingly, the Court GRANTS the Olsons' motion to dismiss WFG's claim

18  against the Olsons arising from breach of the Non-Solicitation Provision without leave to amend.

19              **2.    Section 2.16—The Confidentiality Provision**

20      The Olsons contend that the Confidentiality Provision (1) is separately void for the same

21  reasons they contend the Nonsolicitation Provision is void, and (2) WFG's breach of contract

22  claim based on the Confidentiality Provision separately fails because WFG has not plead

23

24  [3] The Olsons suggest that if the Court finds one provision of the Agreement void, the Court should find the entire Agreement void.  *See* Mot. 14–15.  The cases cited by the Olsons involve courts

25  declining to reform noncompete or nonsolicitation *clauses*—they do not involve courts refusing to reform entire contracts that include a void clause.  *See Dowell*, 179 Cal. App. 4th at 579 (affirming

26  trial court's decision to decline to reform the void noncompete and nonsolicitation *clauses* within the broader agreements); *Kolani*, 64 Cal. App. 4th at 408 (same).  The Court declines to reform the

27  void Nonsolicitation Provision, and the Court's conclusion with respect to the Nonsolicitation Provision does not disturb the other provisions in the Agreement.

28  Case No.: 24-cv-00480-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

"sufficient factual matter" to support the claim.  Mot. 11, 15.  The Confidentiality Provision provides "Agent will not use, disseminate or reveal, other than on behalf of WFG as authorized by WFG or the Product Providers, any Confidential Information or Trade Secret of WFG or of the Product Providers, which Agent has or hereafter receives."  Agreement § 2.16.  Confidential Information is defined as:

> Any and all Personally Identifiable Information or confidential and proprietary records, data or information created by or on behalf of, or belonging to, WFG and now or hereafter acquired by, made known or disclosed to the Agent or any Assistant which has value to, and is not generally known by, competitors or potential competitors of WFG, and includes but is not limited to hierarchy lists and Personally Identifiable Information deemed to be confidential by applicable federal, state, commonwealth and/or local laws and list(s) of WFG agents, including their identities and contact information. Confidential information does not include information which becomes generally available to the public other than as a result of disclosure by the Agent, any Assistant or any member of WFG's network of contractually affiliated agents.

*Id.* § 1.8.

### a.      Whether Section 2.16 Is Void

The Olsons argue that this provision is "even broader" than the Nonsolicitation Provision because it "would preclude Mr. Olson from contact with his mom, who is an agent at WFG." Mot. 11.

The Court finds that the Confidentiality Provision, while broad, is not so broad to be void under section 16600.  The Olsons' cited cases do not change the Court's conclusion.  *Dowell* evaluated an agreement that included a covenant not to compete which explicitly prevented the employee from rendering services based on the employee's application of confidential information.  *Dowell*, 179 Cal. App. 4th at 568.  In other words, the covenant not to compete incorporated the confidentiality restriction; the noncompete and nonsolicitation clauses were "tethered" to the use of confidential information.  Here, the Confidentiality Provision is separate from the Nonsolicitation Provision, and the Nonsolicitation Provision does not incorporate or rely on an interpretation of the Confidentiality Provision.

Case No.: 24-cv-00480-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
11

1    The Olsons also cite *W. Air Charter*.  Mot. 12 (citing *W. Air Charter*, 2017 WL 7240775,

2    at *1).  The agreement in that case involved a provision, titled "Restrictions on Competition," that,

3    like the agreement in *Dowell*, also combined the nonsolicitation terms with the confidentiality

4    terms.  *Id.* at *1.  The Restrictions on Competition provision prevented the employee from

5    soliciting any past, current, or prospective clients "to the extent that such solicitation involves

6    acquisition, disclosure, or use of Company's Confidential Information."  *Id.*  The provision

7    restricted employees from "keep[ing] or us[ing]" confidential information "for the purpose of

8    soliciting business for Employee's own business interests" and provided that employees would

9    "never use Confidential Information to compete with Company, both during and after Employee's

10   employment, in perpetuity."  *Id.*  "Confidential Information" was "broadly defined" to include "all

11   information that has or could have commercial value or other utility in the business of the

12   Company," and "any information" "related to Company's clients or business partners."  *Id.* at *2.

13   The Confidentiality Provision here differs from those at issue in both *Dowell* and *W. Air*

14   *Charter* in that it is a standalone provision not tethered to the Nonsolicitation Provision, and it is

15   more narrow in scope.  For instance, the Confidentiality Provision here is tailored to personally

16   identifiable information "deemed to be confidential by applicable federal, state, commonwealth

17   and/or local laws and list(s) of WFG agents, including their identities and contact information"

18   with an exception for information "which becomes generally available to the public."  Agreement

19   § 1.8.  Moreover, the claims brought by WFG appear to be about the improper use of confidential

20   information, and the breach of contract claim based on breach of the Confidentiality Provision

21   "does not stand or fall on the non-solicitation provision and instead turns on the misuse of

22   information."  *First-Citizens Bank & Tr. Co. v. HSBC Holdings plc*, No. 23-CV-02483-LB, 2024

23   WL 115933, at *10 (N.D. Cal. Jan. 10, 2024) (declining to dismiss at pleading stage breach of

24   contract claim that "turn[ed] on use of confidential and trade-secret information to solicit others").

25   At this stage, the Court declines to find that the Confidentiality Provision is void under

26   section 16600.

27

28   Case No.: 24-cv-00480-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
     12

United States District Court
Northern District of California

**b.**    **Whether WFG Pleads Sufficient Facts to Establish Breach of Section 2.16**

The Olsons argue that WFG's contract claim separately fails because WFG has not plead sufficient factual matter to state a plausible claim for breach of the Confidentiality Provision. Mot. 15.  The Olsons contend that WFG's allegations with respect to breach of the Confidentiality Provision (*e.g.*, misuse of "hierarchy," "compensation structure," "insurance agent lists") amount to conclusory references to undefined confidential information.  *Id.*

WFG alleges that "the position of an agent within a particular hierarchy, and the relationship between agents within a hierarchy" is "maintained as confidential."  FAC ¶ 26.  It is knowledge of this specific location within the hierarchy that WFG contends the Olsons used to target insurance agents to move to GFI.  *Id.* ¶¶ 105–06 (alleging that the Olsons "directed [] lies to the downline insurance agents so they could line up those recruits and use them to force the uplines to move to GFI" and "recruited WFGIA insurance agents that were upline and incentivized them to encourage their downlines to join GFI").  WFG argues that the Olsons' use of this confidential hierarchy information to recruit WFG agents allegedly violates the Confidentiality Provision.  *See* Mot. 6–7.

In addition to the confidential hierarchy information, WFG contends it has alleged that the Olsons violated the Confidentiality Provision by sharing "confidential compensation information" through statements made by other defendants.  *Id.* at 7–8 (arguing "GFI employees," "Defendant DaJuan Cofield," "Defendant Cherniawski," and "Manuel Valle" shared confidential information). The Court is not convinced that WFG can rely on statements made by other Defendants to support its claim for breach against the Olsons.  Nevertheless, taking the allegations in the FAC as true, the Court finds that WFG's allegations regarding the confidential location of an agent within a particular hierarchy and the Olsons' alleged use of that information are sufficient to plausibly plead a breach of the Confidentiality Provision against the Olsons.

Accordingly, the Court DENIES the Olsons' motion to dismiss WFG's breach of contract claim against the Olsons arising from breach of the Confidentiality Provision.

### 3.    Section 2.17—the Disparagement Provision

The Olsons next argue that the Disparagement Provision (1) is void as being "even broader" than the other restrictions, and (2) WFG's breach of contract claim based on the Disparagement Provision separately fails because WFG has not plead "sufficient factual matter" to support the claim.  Mot. 13, 17.  The Disparagement Provision provides that the Agent "shall not do anything that will damage the business, good name or reputation of WFG, Affiliated Companies and/or their respective officers, directors, and employees."  Agreement § 2.17.

#### a.    Whether Section 2.17 Is Void

The Olsons argue that the Nondisparagement Provision is void because, if enforced, the practical effect of the provision would prohibit them from "differentiating themselves and any of their future business endeavors from WFG."  Mot. 14.

Both parties refer to *Parsable.* 2022 WL 19692034.  In that case, the court evaluated a separation agreement entered into between employee and his former employer.  The employee agreed to "refrain from any disparagement, defamation, libel, or slander" of his employer and "refrain from making, either directly or indirectly, any negative, damaging or otherwise disparaging communication concerning [his employer] or its services to any of the clients of [his employer]," including "any negative, damaging or otherwise disparaging communications on Glassdoor, Indeed, LinkedIn, or any other similar websites, media outlets, newspaper, magazine, forum, or any other distribution channel or other third parties." *Id.*  The employer alleged the employee violated the agreement by making false and disparaging statements.  The employee moved to dismiss the complaint, arguing, among other things, that the non-solicitation clause was void and the non-disparagement clause was "an unlawful de facto non-compete clause." *Id.* at *3. The court found that the non-solicitation clause was void under California law, but the non-disparagement clause "appear[ed] to be enforceable, at least in part." *Id.* at *5.

Here, as in *Parsable*, WFG's breach of contract claim based on the Nondisparagement Provision "does not depend upon [the Olsons'] obligation not to make negative comments." *Id.* The FAC, as in *Parsable*, alleges "not only negative comments made by [Defendants], but

disparaging ones." *Id.* at *5.  For example, the FAC alleges that Defendant Dajuan Cofield

"claimed that WFGIA left a widow without any income after her husband, a WFGIA insurance

agent, died suddenly."  FAC ¶¶ 101–02; *see also id.* ¶¶ 119 (alleging Mr. Olson told "several lies

about WFG"); 120 (alleging Mr. Olson "claimed Thawley would be joining them at GFI").  The

Court agrees that it need not reach the question of whether the Nondisparagement Provision

violates section 16600 "as applied to merely negative comments" because WFG relies on

disparaging comments, not solely negative comments, to support its cause of action for breach of

the Nondisparagement Provision.  *Parsable*, 2022 WL 19692034, at *5.

Accordingly, the Court declines to find that the Nondisparagement Provision is void under

section 16600.

### b.      Whether WFG Pleads Sufficient Facts to Establish Breach of Section 2.16

The Olsons argue that WFG's contract claim separately fails because WFG has not plead

(1) special damages, or (2) any statements made by the Olsons that could meet any enforceable

definition of disparagement.  Mot. 17–18.

To state a claim for disparagement, a plaintiff must allege "a false and misleading

statement that (1) specifically refers to the plaintiff's product or business and (2) clearly derogates

that product or business."  *Parsable*, 2022 WL 19692034, at *5 (citing *Hartford Cas. Ins. Co. v.

Swift Distrib., Inc.*, 59 Cal. 4th 277, 286 (2014)).  A plaintiff must also allege special damages.  *Id.*

(citing *TSI USA LLC v. Uber Techs.*, No. 17-cv-3536-HSG, 2018 WL 4638726, at *6 (N.D. Cal.

Sept. 25, 2018)).  "Usually, ... the damages claimed have consisted of loss of prospective contracts

with the plaintiff's customers."  *Nichols v. Great Am. Ins. Cos.*, 169 Cal. App. 3d 766, 773, (Ct.

App. 1985).

WFG has alleged that, because of the Olsons' disparagement, "[d]ozens of insurance

agents have already terminated their agreements with WFGIA and moved to GFI" and "WFGIA

continues to lose insurance agents and customers."  FAC ¶ 255.  WFG contends it plead the

special damages it has endured "as best it can currently" without the benefit of expedited

1   discovery.  Opp. 11.

2         The above allegations regarding loss of "dozens" of unnamed agents and "customers" are

3   insufficient to adequately plead special damages stemming from the Olsons' alleged

4   disparagement.  *Bastidas v. Good Samaritan Hosp. LP*, No. 3:13-CV-04388-SI, 2017 WL

5   1345604, at *5 (N.D. Cal. Apr. 12, 2017) ("special damages must be pled with particularity

6   because such damages are unusual for the type of claim in question—[they] are not the natural

7   damages associated with such a claim") (quotations omitted).

8         Accordingly, the Court GRANTS the Olsons' motion to dismiss WFG's breach of contract

9   claim against the Olsons arising from breach of the Nondisparagement Provision with leave to

10  amend to plead with greater specificity any special damages.

11        **B.      Tortious Interference with Contract—Second Cause of Action**

12        The Olsons also move to dismiss WFG's tortious interference with contract claim on the

13  grounds that WFG has not plead an independently wrongful act or "any specific resultant

14  disruption to contractual or economic relationships."  Mot. 19.

15        "In order to state a claim for tortious interference with a contract, a plaintiff must plead

16  (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract;

17  (3) defendant's intentional acts designed to induce a breach or disruption of the contractual

18  relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting

19  damage."  *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (citations

20  omitted).  To state a claim for interference with an at-will contract, WFG must also "allege that

21  [the Olsons] engaged in an independently wrongful act."  *Ixchel Pharma, LLC v. Biogen, Inc.*, 9

22  Cal. 5th 1130, 1148 (2020).  Because WFG alleges that the Olsons interfered with at-will

23  contracts, it must allege that the Olsons did so through wrongful means.  *Id.* at 1162.

24        The Olsons argue that "the *only* independently wrongful act alleged in the Complaint is the

25  use of WFG's 'confidential business information about its business structure, insurance agent

26  performance, hierarchy structure, compensation, and agreements with product providers to induce

27  their colleagues to leave WFGIA.'"  Mot. 19 (citing FAC ¶ 263).  As explained above, *supra*

28  Case No.: 24-cv-00480-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    Part III(A)(2), WFG has plausibly pleaded a breach of contract claim based on breach of the

2    Confidentiality Provision.  WFG alleges that the Olsons "used WFGIA's confidential business

3    information" to "induce their colleagues to leave WFGIA."  FAC ¶¶ 260–64.  WFG's breach of

4    contract claim and related allegations are sufficient at this stage to plead the independently

5    wrongful act required to state a tortious interference with contract claim.

6           The Olsons next argue that WFG's tortious interference claim fails because WFG has not

7    pled "any specific resultant disruption to contractual or economic relationships."  Mot. 19 (quoting

8    *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1134 (9th Cir.

9    2015)).  The Court agrees.  The FAC lacks sufficient specificity regarding which contract was

10   disrupted.  The FAC alleges that "[d]ozens of insurance agents have already terminated their

11   agreements with WFGIA and moved to GFI" and "WFGIA continues to lose insurance agents and

12   customers."  FAC ¶ 255.  The FAC also alleges that the Olsons induced "other insurance agents"

13   to breach their contracts.  *Id.* ¶ 262.  But these allegations of "generalized disruption of contracts"

14   are insufficient to identify, at a minimum, "the particular contracts" that were interfered with.

15   *Image Online Design, Inc. v. Internet Corp. for Assigned Names & Numbers*, No. CV 12-08968

16   DDP JCX, 2013 WL 489899, at *9 (C.D. Cal. Feb. 7, 2013); *see also Nat'l Specialty Pharmacy,*

17   *LLC v. Padhye*, No. 23-CV-04357-PCP, 2024 WL 2206336, at *4 (N.D. Cal. May 16, 2024)

18   (dismissing tortious interference with contract claim that "d[id] not specify what contracts were

19   interfered with").

20          WFG argues that, unlike the plaintiff in *Name.Space*, it has alleged that the Olsons

21   "intentionally disregarded their own contractual obligations when they encouraged other WFGIA

22   insurance agents to breach their own contractual obligations and resign from WFGIA to join GFI."

23   Opp. 15.  But that distinction is unavailing because allegations that the Olsons interfered with

24   "other insurance agents[']" contracts (FAC ¶¶ 259, 263) nevertheless lack sufficient specificity

25   regarding which contracts were disrupted.

26          Accordingly, the Court GRANTS the Olsons' motion to dismiss WFG's tortious

27   interference with contract claim against the Olsons with leave to amend consistent with the

28   Case No.: 24-cv-00480-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    Court's Order.

2        C.        **Fraud—Fourth Cause of Action**

3        The Olsons argue that WFG fails to state a claim for fraud because the allegations lack the

4    requisite specificity for pleading fraud under Rule 9(b).  Mot. 20–21.  Under Rule 9(b), WFG

5    "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P.

6    9(b).  The allegations must be "specific enough to give defendants notice of the particular

7    misconduct which is alleged to constitute the fraud charged so that they can defend against the

8    charge and not just deny that they have done anything wrong."  *Minkler v. Apple, Inc.*, 65 F. Supp.

9    3d 810, 815 (N.D. Cal. 2014) (citing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)).  "To

10   that end, the allegations must contain an account of the time, place, and specific content of the

11   false representations as well as the identities of the parties to the misrepresentations."  *Id.*

12   (quotations omitted).

13       Specifically, the Olsons contend that WFG's fraud claim does not identify the speaker of

14   the false statement, how such statements could be attributable to the Olsons, or identify the "time,

15   place, or specific content" of the false statement.  Mot. at 20.  WFG responds that the "speaker" of

16   the false statement is any "Target" WFG insurance agent engaged in the Anchor Leg strategy, who

17   represented to WFG in word or action (fraudulently) that they remained loyal to WFG, while they

18   make plans to follow their spouse to GFI, including the Olsons.  Opp. 17 (citing FAC ¶¶ 84–87).

19   WFG contends that the fraudulent statements "of other Anchor Leg participants" can be attributed

20   to the Olsons "because they are working to the benefit of Defendants via GFI, and thus serve as

21   their co-conspirator agents."  Opp. 17 (citing FAC ¶ 78).

22       As an initial matter, to the extent WFG is relying on an agency-principal relationship to

23   support its allegations of fraud, such a relationship must be plead.  *See Union Pac. R.R. Co. v.*

24   *Hill*, No. 21-CV-03216-BLF, 2021 WL 5964595, at *8 (N.D. Cal. Dec. 16, 2021) ("Union Pacific

25   has failed to sufficiently plead a principal-agent relationship that would make Mobile Mini liable

26   for the acts of the Hills and Privette").  The FAC alleges that "GFI was formed to enrich the

27   Olsons and for the unlawful purpose of stealing from WFGIA and its insurance agents."

28   Case No.: 24-cv-00480-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

FAC ¶ 78.  This allegation, although perhaps alluding to an agency-principal relationship, falls short of alleging an agency-principal relationship such that statements made by the "Target" WFG insurance agents engaged in the Anchor Leg strategy can be attributed to the Olsons.

WFG also argues that the Olsons "made representations to WFGIA through their Agreements that they would not violate the terms of their Agreements."  Opp. 17.  But the FAC does not allege that the Olsons made any false statements by signing their Agreements.

Having failed to plead with particularity the details of the false representations, WFG has failed to state a claim for fraud.  Accordingly, the Court GRANTS the Olsons' motion to dismiss WFG's fraud claim against the Olsons with leave to amend consistent with the Court's Order.

### D.      Conversion—Sixth Cause of Action

The Olsons next argue that WFG's conversion claim fails because (1) the Restrictive Covenant is void, (2) there is no factual allegation that Mr. or Ms. Olson took any confidential information, and (3) the conversion claim is predicated solely on the alleged taking of confidential information and is therefore preempted by the California Uniform Trade Secret Act ("CUTSA").  Mot. 21.  Having found that WFG has stated a claim for breach of the Confidentiality Provision, the Court rejects WFG's first two arguments.

Regarding the second preemption argument, "CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'"  *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) (quoting Cal. Civ. Code § 3426.7, subds. (a), (b)).  CUTSA "preempts common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief."  *Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*, No. 16-CV-03737-JCS, 2017 WL 412524, at *5 (N.D. Cal. Jan. 31, 2017) (internal quotations omitted).

The Olsons argue that WFG's conversion claim "is based exclusively on the Olsons' alleged use of 'WFGIA's confidential business information' and does not allege that the Olsons converted anything apart from its supposed 'confidential information.'"  Mot. 22 (citing FAC ¶¶ 183–88).  WFG responds that the Olsons' preemption argument is "premature," and WFG's

1    conversion claim is not preempted because it is based on facts and allegations distinct from any

2    trade secret claim.  Opp. 19.

3            Here, WFG's conversion claim is based entirely on its allegations that Defendants

4    "obtained WFGIA's confidential business information" and "unlawfully brought this information

5    to their new competing business."  FAC ¶¶ 288–89.  In other words, WFG alleges that Defendants

6    "converted" WFG's confidential information.  *See id.*; *see also* Opp. 20.  Even though WFG "does

7    not plead a trade secret claim or that the confidential information which was converted constitute

8    trade secrets" (Opp. 20), its conversion claim is still based exclusively on the Olsons' alleged use

9    of this confidential business information.  Thus, WFG's conversion claim is preempted by

10   CUTSA.  *See Avago*, 2017 WL 412524, at *6 ("Courts in this District have concluded … that

11   CUTSA preemption extends to claims based on the misappropriation of confidential and

12   proprietary information, regardless of whether it qualifies as a 'trade secret.'"); *see also SunPower*

13   *Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *7 (N.D. Cal. Dec. 11,

14   2012) (holding that "CUTSA supersedes claims based on the misappropriation of information,

15   regardless of whether such information ultimately satisfies the definition of trade secret").

16           WFG has not plead separate facts that could support a conversion claim apart from the

17   facts alleged regarding the misuse of confidential information.  The FAC describes the Olsons'

18   purported misuse of WFG's confidential information for use in establishing their competing

19   company, GFI.  These are the same facts used to support WFG's claim for conversion of

20   confidential information.  Accordingly, as currently plead, WFG's conversion claim is preempted

21   by CUTSA.  *See Avago*, 2017 WL 412524, at *5 (N.D. Cal. Jan. 31, 2017) (dismissing at pleading

22   stage conversion claim as preempted where "the only materials described in the Counterclaim are

23   identified only generally as the confidential and proprietary materials that were provided to

24   Avago").

25           The Court GRANTS the Olsons' motion to dismiss WFG's conversion claim against the

26   Olsons.  Although the Court is skeptical WFG can avoid preemption based on the facts currently

27   alleged in the FAC, WFG will be permitted leave to amend to state a claim of conversion.

28   Case No.: 24-cv-00480-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

**E.     Civil Conspiracy—Third Cause of Action**

The Olsons argue that WFG's civil conspiracy claim fails because WFG has not "identif[ied] a specific wrongful tort that Defendants engaged in."  Mot. 20.  Civil conspiracy consists of three elements: "(1) the formation and operation of the conspiracy, (2) wrongful conduct *936 in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct."  *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935–36 (N.D. Cal. 2015) (citing *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995)).

The FAC alleges that Defendants and others "conspired to create a competing business to unfairly and unlawfully compete against WFGIA" and "conspired to use WFGIA's confidential information to induce insurance agents to breach their agreements."  FAC ¶ 267.  WFG argues that the FAC makes plausible allegations regarding the "Anchor Leg" scheme to purportedly recruit away WFG agent married couples to GFI, while one of the spouses remained at WFG (mirroring the overt acts that the Olsons had already begun).  Opp. 15–16 (citing FAC ¶¶ 83–88). The Olsons argue that WFG cannot plead a civil conspiracy claim on a breach of contract.  Mot. 20 (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 508 (1994)  (holding that a contracting party cannot be liable for civil conspiracy to interfere with its own contract)). The allegations relating to the "Anchor Leg" scheme appear related to both WFG's claims for breach of contract and WFG's claims for tortious interference with contract.  However, for the reasons stated above, including because the FAC lacks sufficient specificity regarding which contracts were disrupted, WFG has not stated a plausible claim for tortious interference with contract.  Thus, those allegations cannot supply the tort required to state a claim for civil conspiracy.  WFG also brings claims for fraud and conversion.  Because the Court finds that WFG has failed to state a plausible claim for fraud and conversion (*see supra* Parts III(C) and III(D)), WFG's allegations for those claims similarly cannot supply the tort required to state a claim for civil conspiracy.

Accordingly, the Court GRANTS the Olsons' motion to dismiss WFG's civil conspiracy claim against the Olsons with leave to amend consistent with the Court's Order.

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## F.   Unfair Competition Law—Seventh Cause of Action

The Olsons argue that WFG's UCL claim fails because "all of WFG's other claims fail as a matter of law."  Mot. 22 (cleaned up).  The Court denied the Olson's motion as to WFG's breach of contract claim based on breach of the Confidentiality Provision.  *See supra*, Part III(A)(2). Accordingly, the Court rejects the Olsons' argument that WFG's UCL claim fails on this basis and DENIES the Olsons' motion to dismiss WFG's UCL claim.

## G.   Unjust Enrichment—Fifth Cause of Action

The Olsons argue that WFG's unjust enrichment claim fails because (1) unjust enrichment is not a cause of action under California law; (2) the unjust enrichment claim is entirely derivative of its UCL claim; and (3) the unjust enrichment claim is preempted by CUTSA because it is based solely on Defendants' alleged misuse of WFGs confidential information.  Mot. 23.  The Court finds the first two arguments unpersuasive.  *See Katz-Lacabe v. Oracle Am., Inc.*, No. 22-CV-04792-RS, 2023 WL 6466195, at *6 (N.D. Cal. Oct. 3, 2023), aff'd, No. 22-CV-04792-RS, 2023 WL 7166815 (N.D. Cal. Oct. 30, 2023) ("Plaintiffs' FAC successfully pleads an unjust enrichment cause of action under California law"); *see also Astiana v. Hain Celestial Group., Inc.*, 783 F.3d 753, 756 (9th Cir. 2015) ("To the extent the district court concluded that the [unjust enrichment] cause of action was nonsensical because it was duplicative of or superfluous to [plaintiff's] other claims, this is not grounds for dismissal").

Regarding the Olsons' argument that the unjust enrichment claim is preempted by CUTSA, WFG responds that the claim is not preempted because its unjust enrichment claim is "wholly distinct" from its claims for conversion and unfair competition law.  Opp. 22.  As WFG acknowledges, its unjust enrichment claim is based on allegations that "Defendants unjustly enrich themselves *when they use WFGIA's confidential business information* to replicate its successful business model and start a new, competing business."  Opp. 21 (citing FAC ¶ 279) (emphasis added).  Thus, WFG's unjust enrichment claim is preempted by CUTSA.  *See Memry Corp. v. Kentucky Oil Tech., N.V.*, No. C-04-03843 RMW, 2005 WL 1656877, at *1 (N.D. Cal. July 14, 2005) (unjust enrichment claim preempted by CUTSA "to the extent" the claim is based on

Case No.: 24-cv-00480-EJD
**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

allegations that counterdefendant "misused confidential information" because "[a]t bottom, any such claim is for misappropriation of trade secrets, and [counterclaimant] should not be able to avoid the CUTSA's preemptive ambit by dressing ... claims up in different clothing....") (cleaned up).

Accordingly, as currently plead, WFG's unjust enrichment claim is preempted by CUTSA. As mentioned however, although the Court is skeptical WFG can avoid preemption based on the facts currently alleged in the FAC, WFG will be permitted leave to amend to state a claim of unjust enrichment.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the Olsons' motions as follows:

- The Court GRANTS the Olsons' motion to dismiss WFG's breach of contract claim against the Olsons arising from breach of the Non-Solicitation Provision without leave to amend.

- The Court DENIES the Olsons' motion to dismiss WFG's breach of contract claim against the Olsons arising from breach of the Confidentiality Provision.

- The Court GRANTS the Olsons' motion to dismiss WFG's breach of contract claim against the Olsons arising from breach of the Nondisparagement Provision with leave to amend.

- The Court GRANTS the Olsons' motion to dismiss WFG's tortious interference with contract claim against the Olsons with leave to amend.

- The Court GRANTS the Olsons' motion to dismiss WFG's civil conspiracy claim against the Olsons with leave to amend.

- The Court GRANTS the Olsons' motion to dismiss WFG's fraud claim against the Olsons with leave to amend.

- The Court GRANTS the Olsons' motion to dismiss WFG's conversion claim against the Olsons with leave to amend.

Case No.: 24-cv-00480-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

- The Court DENIES the Olsons' motion to dismiss WFG's UCL claim against the Olsons.
- The Court GRANTS the Olsons' motion to dismiss WFG's unjust enrichment claim against the Olsons with leave to amend.

Any amended complaint must be filed within 21 days of this Order.

**IT IS SO ORDERED.**

Dated: July 19, 2024

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

Case No.: 24-cv-00480-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
24